United States v. Williamson, counsel for the appellant, you may proceed. I suppose I'd like to get him to stand up and say, and sit down. I think that's the case. I think the briefs set out all the arguments in a very straightforward way, and make predictable arguments. But as I present this discussion briefly about what I think is important, how the Gantt case and this case... Well, now, how do you read Gantt in terms of your side of the case? Well, first of all, Gantt is current law. And just if I can state the obvious, it's current law, which is clearly violated in this case. Well, why don't we start with, what do you think Gantt says? Gantt says that usually, not invariably, but usually, a search warrant, a complete copy of a search warrant, must be served at the outset of a search in order to, as the Supreme Court says, be ready to conduct a search. Very significant policy considerations are insurance and notice to the person who's being served by the agency that they're lawfully and that the person being searched knows that they're lawfully eligible for the search areas. Counsel, in this case, though, there was oral notice of the scope of the search. Right. And there was no request by your client to then see the warrant at that time. There was no request by my client, but the notice and insurance functions go not only to the client, but to the persons and the property being served by the president. And there was a request by Mr. Williamson's father, and there is no duty in Gantt imposed to make on the officers. Counsel, I thought that the present law of Gantt, assuming that Gantt is still good authority, was the officers are supposed to give the people at the place to be searched a copy of the search warrant when they begin the search, not just as they're leaving. Yes, sir. And that was violated here. Yes, sir. But, and this is the big issue for you, but by and large, we don't do anything about it if they don't follow that rule. It has to be prejudicial or willful or one of these categories. And what I can simply say is this, is that it usually must be followed, and there are exceptions. I mean, and those exceptions are exigent. Now, I'm not talking about the rule about whether it must be followed. I'm talking about the remedy for when it is not followed. And as I understand it, under Smith and other cases, if it's not followed, we don't do anything about it where it was non-prejudicial and not in willful disregard of Rule 41. It was a willful disregard. There isn't any question. Oh, there is. The agent does not seem to have been of a mind, I knew what the law is, and I chose to violate it. He seems to have been of a mind, I wish to follow the rules, and this is what I understood the rules to be, so I was wrong. And that's actually the last thing that I have to say in this presentation, which I would like to hearten. This case isn't about Gant. This case is about Hale, and it's about the, it's about Hale and Martinez, which is also a case that followed Gant. And it's a case that talks about what the duty of the officers is and the duty of those officers is to know the law. Counsel, you're again getting away from the question of what do we do about it when the officers violate the law to back to the question of what are the officers supposed to do. As I understand your question, the issue of what you're supposed to do is you're supposed to suppress in order to determine at least. That's, the officers are supposed to give the warrant at the beginning, but as for whether we're supposed to suppress, that's where I, it looks to me like there's a hole in your Well, that goes back to whether it was willful, and let me just tell you why I think it was willful. Because Gant says it was willful and deliberate, and that's what Gant felt. It must, in this particular case, well, let me, let me go back to the other question, if that's the best way to answer it. To say that, oh, well, he wanted to follow the law, it wasn't deliberate, presumes, it presumes, this applied a law that was the correct law. You can't say that, you can't say that if you don't know the law, that's, that, that would excuse every, every failure to follow the law. I mean, the favorite police officer could say, well, you know, I violated the law, but I don't know the law, so ignorance of the law is a good excuse, and Only if he was lying. So the remedy is suppression because it was deliberate. It was deliberate in this case. The officer admitted it was deliberate. He was following their own policy. We're not saying he's a bad officer, but if you, this, this case has only really not to do with whether or not it was technically followed or not. This case stands for the concept of what officers should or should not know when they're executing the warrant or executing policies that are declared or public. And there wasn't any question of what Gant said at the time of the search. The law was established two years before. He admitted it on the stand. There were no accident circumstances. The Gant case, there is. Does it matter, does it matter that the officer told the subject of the search and the subject's mother that he was searching pursuant to a search warrant, and they let him go ahead rather than asking for a copy prior to the search? No, because the assurance has to come from the court. Gant says that one of the reasons that you have the whole process between the person being searched, the public, and the police. And so that's why we give him a copy. That's why we say we give him a copy of the search warrant and all the patterns and everything for them to make an independent analysis of what's right and wrong based on what the court says. It's not a police officer. Police officers can say anything. They don't trust the police officers. That's why Mr. Williamson, in this case, the father, who asked for a warrant and was withheld from him. For how long? What was the period of time between the request and the time that the warrant was given at the end of the search? The record is clear that the search went on for four hours, and the record seems to imply that it was towards the end of the search. Am I right in questioning that the officer, Officer Nelson, in this case, when he was asked about this, I think he felt that we were here illegally and that there was something, there was no legal reason why we should be here. There was no contract. Well, that turned out to be wrong, of course, because there was a valid warrant, and you're not questioning the validity of the warrant. So I don't know whether it will turn out to matter to the answer, but if it's towards the end, I don't know whether that makes a difference. But in Smith, I believe there was a quarrel as to whether it was a 10-minute delay or a 30-minute delay, and we held that it didn't matter. Smith doesn't even apply it, I think, in his case at all. Because the search there was pre-Gant. It was pre-Gant. I understand. When the person asked, they said, well, let's take a look at the warrant, and then they just gave it off. They really weren't interested in it. These people were interested. They were interested in asking for at least the bottom line. Counsel, what would the prejudice be in this case, or are you arguing prejudice per se? I think prejudice is per se. In the court's ruling, you don't have to reach prejudice if it's a deliberate violation. And it's clearly deliberate here, and then you get into the issue of distinction about whether it was intentional or not intentional. But that's how I answer that. Well, I mean, all of that to the side. What is your understanding of the prejudice in this case? Well, I think there's always prejudice when you have people who are being, and particularly in this case, when the family felt intrigued upon the anxiety of the search and the altercation. Okay. But was there anything in the actual search that was beyond the scope of the warrant? Well, that brings up the other question in this case, what is the over-breadth of the warrant. This is another whole argument. I think it's too – No, I'm not – and I'm not asking you about over-breadth. I'm talking about given the text of the warrant, are you contending that anything that was searched exceeded the limits of its – No, I don't think – All right. There's no – I'm not arguing prejudice. All right. I think my argument is really close. All right. It did follow the law. It was delivered. And suppression is required here for the reason that we have to have – you're talking about policy here. You have to go back and say, why was Gant decided? And they clearly say it was decided. You have to read Gant to uphold the policy. Notice if – and the important answer is if you don't read it that way, it doesn't mean anything. Counsel, I have another question, but it's not on Gant. If you have anything further to say on that issue, go ahead. But I do want to ask you a question about the enhancement. Well, let's go with that. Okay. We have this question of the two-level enhancement to the sentence, and as I understand it, it was based on the recital of the PSR with respect to the sending of the material. Is it clear that the material that was actually sent is the same as the material that's described in the PSR? We're not contesting that. You're not contesting that. Everything else regarding the – I don't know if the Court has a lot of questions about this, but I'm very troubled by the applicant's sentencing. And what I feel is a misapplication of my rights in this case. Is it going to matter if you prevail on one or another aspect of the appeal on the sentencing, then we would remain for a resentencing, and the resentencing would be under Booker. It's just hard to imagine that the judge isn't going to depart upward to the maximum permitted by statute. I've made a comment. I'm going to thank God we have a maximum. The maximum is the cap of what your client's going to get. Well, the judge specifically said that nothing less than the maximum would possibly be appropriate for this offender and this situation and so forth, and she made quite an extensive set of comments to that effect. So under the recent decision in Manyweather, why wouldn't any error in the guidelines application be harmless in view of her clear indication that she would sentence to the statutory maximum? Let me just say that you're probably right, but I think it practically isn't what we have to deal with here. You're talking about establishments. Well, Manyweather is what we have to deal with, because it's now. Here's the argument. It's that Kimbrough says you have to consult the guidelines. Your job is to review this, to know, though, that it's a matter of suppression of the law. They were misapplied, in my opinion, in this case, and because they were misapplied and they're part of the sentencing consideration, the sentence can't be valid. And I don't know if she can get to the maximum we want to get there. Why not under Booker? What else is there? In Manyweather, I mean, it's kind of Katie bar the door now, and your client, this is not your usual child pornography case. This is not in the heartland. Well, it's not, but, again, I think that the court is just going to say, Ralph, you have to review these cases for abuse of discretion. Look, let's say we were to look at the step that you just directed our attention to, did the judge apply the guidelines correctly, and say, no. This is kind of an analog to your and my earlier discussion. Our job is not limited to correcting the trial judge's papers. We have to decide whether there's any point to vacating the sentence, and there it's hard to see what prejudice there might be from this or that calculation error where the judge has plainly indicated on a basis in the record an intention to sentence to the maximum. Well, if Booker means anything, it's still part of the equation. And I don't know. I mean, she can get there by just saying that's all I can do. But the findings in her order are lost, and that's all I can tell you. Can you distinguish many-whether? I realize many-whether is going down, and this is going up. Yes, I realize that, and some of the arguments that marry-whether, what the judge didn't marry-whether is what we wanted to hear, because we hadn't finished the casting. We had other issues involved. I wanted to reduce the blind and reflect on this. You may do so, counsel. Good morning, Your Honor. This is Jeffrey Kent on behalf of the United States. I happened to read many-whether more closely this morning, and I noticed that two of you judges were on different sides of that opinion. And it is essentially the flip of our case rather than an upward departure. It was a downward departure. And under the majority holding, it certainly does seem that the abuse of discretion standard now applies, rather than the de novo review. Ironically, Judge Kleinfeld, from a prosecutor's perspective, we agreed with your argument in the dissent that the ultimate sentence in that case seemed to be unduly lenient, but the law that was settled, obviously, was that we're now operating under an abuse of discretion system. When I first wrote the brief in this case, the only law I was able to find, and the issue as to how much microanalysis needs to take place of whether the was the Eighth Circuit case, it seems that many-whether now speaks to that in the Ninth Circuit. You have to be able to count to three in this business, and I only got a third of the way there. That's right. So, but with regard to the guidelines themselves, as you will note from our brief, we do disagree with Mr. Roloff that the guidelines were improperly applied. Could you talk a little about that relevant conduct and grouping issue? Yes. I mean, if the departures were based upon pure relevant conduct. I'm not talking departures now. I'm talking adjustments. Right. But under 1B1.3, under the guidelines as they were drafted at that time, the guidelines did not allow the incorporation of the production guidelines as such. However, the operable guidelines, in essence, allowed for the same thing in both the guidelines themselves and the commentary, the notes and the commentary, by observing that any pattern of sexual abuse not only justified the five-level increase under the guidelines, but it was an appropriate subject matter for departure above and beyond that. So, we want to make sure, and I believe the court does understand, that when the defense argues that you can't incorporate the production guidelines to reach the result under the receipt and transmission guideline, we don't have disagreement with that. Those guidelines were, those sections were later updated to allow that in the case of production. But what the operable guideline does allow is for the consideration of a pattern of sexual abuse, not just to reach five levels, but to go above and beyond in a departure sense. And I think that's what Judge Aiken did. Counsel, I'd like to ask you about the Rule 41 issue. Yes. And it would appear to me that the cases in which we've said there's been no prejudice. In Smith, the search occurred before Gantt was written, so they couldn't have known about it. And in, I believe it was Groh, there was an exigency. And here, it's post-Gantt, and there is no exigency. Why don't we have to follow Gantt in its relief as well as in its reasoning? I would agree with the distinctions that you observed, Your Honor, that Smith was a pre-Gantt case, and obviously the claim of ignorance of the law is more forgiving. Well, there wasn't. Or how Rule 41 would ultimately be interpreted by the Ninth Circuit. But one of the pivotal findings by Judge Aiken was the good faith of the agent in this case. We had a little bit of an exchange during the hearing about the defense attorney using the term deliberate versus intentional. And deliberate obviously connotes more bad faith, whereas intentional is just what it is. It's a voluntary act. And this record is replete with an agent who was extremely sensitive to the intrusion of a search. As you observed, he provided oral notice to the mother and son. At the end of the search, he didn't just hand them an inventory. He actually invited all three, including the father, to take a look at what was seized, which is above and beyond what Rule 41 requires. My concern, though, is we often tell defendants that ignorance of the law is no excuse when they say, gee, I did this terrible thing, but I didn't have any idea that there was a law against it. And yet here, that's really what the officer's defense was. Not that they were, they operated in good faith, but they operated in good faith having not availed themselves of the opportunity to learn what the rules were. And so what precedents do we have that speak specifically to that kind of situation? Well, what I would suggest to the Court is, you know, perhaps language and opinion that says further claims of ignorance regarding what Rule 41D requires here in the Ninth Circuit will not be tolerated. This agent had come from the Ninth Circuit. Well, why would we tolerate it here if we're not going to tolerate it in the future, having published Gantt and then in three or four cases at least afterwards continued to cite it and in fact reject a claim that it had been implicitly overruled by a Supreme Court footnote? I would ask the Court to not apply Gantt in this case because the record is so replete with the good faith of the agents, the consideration afforded the subjects of the search, that there was no prejudice. Obviously, the oral communication at the beginning advised them of the nature of the search. The agent went so far as not to search the house itself, only the outbuilding, which was the residence of the son, even though the search would have allowed a more expansive search, when the mother said, no, we don't have any, or my son doesn't use computers inside the house and we don't have anything like that here. The obvious subject of the search was the son. This record is so replete with the good faith conduct of the agents, above and beyond what Rule 41 requires in many respects, that as Judge Aiken said, it would truly elevate form over substance to suppress the evidence in this case. I would further observe that... In publishing one more opinion, what would be different between this case and a case that happens one week after we publish the opinion in this case, where the officers are polite and they're kind and they do everything orally and they still don't follow Rule 41? There'll never be any kind of prejudice. The only thing there'll be is one more statement from this Court that, gee, we really mean it. So I guess I don't understand conceptually how that's different. I hear what you're saying, Your Honor. Ideally, law enforcement should be aware of changes in the law for a variety of circumstances, including the defendants coming from a prior district, the FBI manual calling for the service of the warrant at the end of the search. There were, I believe, some five other agents at the site who never corrected him, so they were unfortunately collectively operating under that misconception. Well, that's understandable in a sense because, I mean, there certainly is a very respectable argument that Gant was incorrectly decided, but it is binding on us, and I guess what I'm struggling with is so long as Gant is there, I'm having difficulty just for myself at differentiating the situation. I completely agree with Mr. Roloff's initial comments that Gant is a troubling issue in this case. And at the same time, we believe that Judge Aiken properly decided it after an extensive hearing. I would also ask the Court— Are you saying that—I think I heard you say earlier that you don't think we should apply Gant in this case. Is that what you're saying? Not apply any sanction of suppression, Your Honor. Well, in the simple task of applying a precedent to the facts of this case, Gant is there. Yes, it is. And what does it tell us with respect to this case? It tells us that the agents should provide the subjects of a search with a copy of the search warrant itself at the outset of the search. Yeah, but the question is, does that failure entitle the defendant to a suppression motion? Well, we would argue that the law that he has developed since then, such as the Smith case, requires prejudice. And we would submit that any potential prejudice as to what the agents were doing here was cured by Agent Nielsen advising the defendant and his mother that we have a search warrant to look for child pornography before they began the search. Did they also display the warrant at that time? Yes, they did. I'm fairly certain, Your Honor, I shouldn't say that as assertively as I have, but I believe the record will indicate that he had the warrant in hand and explained that it was a warrant for a search of child pornography of the sense.  Is that about right? Which, as the Court undoubtedly understands, is standard procedure in all parts of the country except the Ninth Circuit. I think all other circuits have instructed the agents to leave the search warrant at the conclusion of the search  In Rule 41 itself is obviously silent on that. The Ninth Circuit has construed it to require service at the outset for policy reasons, but the language itself does not. I would also observe, as I have in my brief, that the Groh case from the United States Supreme Court has, at least in dicta, called into question that very interpretation of Rule 41B, and I think it's mentioned in Smith. But I would agree that Smith is certainly distinguishable and that it was a pre-Gantt case. So... I'm not quite sure I understand your bottom line. We're looking for some guidance in terms of what do we do with Gantt. Do we distinguish it? Do we ignore it? We can't overrule it, obviously. What I would suggest, Your Honor, is that you construe Gantt to require prejudice, and in this case hold that there was no prejudice by virtue of the oral notification and the overall accommodations of the very considerate law enforcement officers. Any other issues you want to address? I've addressed them in the brief. If the Court has any other questions on any other areas, I would be happy to address them, but hopefully the brief and the supplemental authority, which I trust the Court has received. No further questions, apparently. Thank you. Mr. Roloff, you have some reserve time. I hope I can say something. I'm sorry? I said I hope I can say everything I have to say out quick enough. Counsel relied upon the Grove case, which actually is another example of a case where the Supreme Court said that the officers must know the law. That's quoted in there. It's the same case as the Hale case. The good faith argument, all of the judge's findings about good faith do not apply in this case.  It's in the brief. Basically, the exclusionary rule is designed to deter police misconduct rather than legal errors of judges and magistrates. The good faith exception is not relevant where the violation lies in the execution of the warrant, not the validity of the warrant. The footprint of Gant is the footprint of this case. The shoe fits. Let me ask you something about that, whether the shoe really fits. Yes. Gant, on page 1005, says, Violations of Rule 41D do not usually demand suppression. However, under Ninth Circuit law, technical violations of Rule 41D require suppression only if there was a deliberate disregard of the rule or if the defendant was prejudiced. And then it goes on here to say, or in Gant to say, The agents failed to show Gant the complete warrant even after she asked to see it. Now, as I understood it in this case, the agents displayed the warrant, and Williamson and his mother said, go ahead and search, and did not ask to see it. Is that true? Do I have it factually right? That's true. But, Judge, the case, and I can't recall the case right now. I think it's one of the supplemental briefs. The court doesn't require a futile act. So what if they would ask? They weren't going to give it to him. This agent deliberately went and held it. He wasn't going to give it to him because we know that. Because the father came and said, I want to see it, and they said they didn't give it to him. They deliberately went and held it. But he left it before they left. He gave it to them before they left. That was the plan. But that's not what Gant says. Gant says give it to him before. If you want the rule to say give it to him any time or give it after, then I lose. Then you're overruling Gant. Wait a minute. There are two things at issue here. One is displaying it, and one is giving it. The value of displaying it is significant because it protects against the agents lying and saying or implying that they have a search warrant when they don't. They didn't need it. They didn't need it. Well, if an agent refused to display it, that would create a risk. And there was a risk. In Gant, the agents refused to show Gant the complete warrants even after she asked to see it. The complete warrants, and that's what happened here. It doesn't just apply to Gant. Well, the issue at Gant was different, though, because what they had with them was incomplete, whereas here it was complete. Yeah, and they didn't show it to them. They had four warrants. But they didn't ask, and Gant asked. It doesn't require that they ask. That's not a requirement. Why did Gant emphasize that she asked? Let me say this. You've got to focus. This isn't about Gant. I'm trying to make this point. I hope I can do it. One minute. This is about the duty of these police officers to know the law because you have to read 41D in light of the policies of notice and assurance. How can you give notice and assurance if they don't follow the law? What does that mean? It means in light of the policies. If you have a policy that says that there's no prejudice and you don't have to know the law, these policies cannot be upheld. It's the policies we're talking about. Now, Martinez is cited by the government. Martinez is a perfect example of a case where the court said it's not form over substance to have a short delay to uphold the policies of Gant. The person being served couldn't speak English. They delayed service of the warrant for 20 minutes or a half an hour to go get an interpreter to uphold the policies of Gant. It was a technical violation. This was a deliberate withholding of the warrant. And it was a situation where they didn't know the law, and he wasn't going to give it to them, and he withheld it. What policy are we – what policy is this court directing the police officers to follow? What policy are we trying to follow? The policy is we want these guys to be polite and courteous and to follow the law and to know the law. And suppression is required when there's police misconduct so that we can ensure that this doesn't happen. Otherwise, the rule and the policies don't mean anything. And that's what I wanted to start and end with focusing on. It isn't these technical things that you're talking about. Let's look at the big picture and the policies here. And the policy here in this case is that these guys need to know the law. If there's never a prejudice, they can always say, well, you know, we violated the law. There's no prejudice, so there's no deterrence. There's no incentive for them to know the law and follow Gant. Gant is still good law. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: O'scannlain, Kleinfeld, Graber